**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NATIONAL CREDIT COUNSELING     *
SERVICES, INC.

       Plaintiff          *

v.                     *  Civil Action No: 1:06 CV 02028 RBW

UNITED STATES OF AMERICA     *

       Defendant     *

   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

     Plaintiff, National Credit Counseling Services, Inc. (alternatively, "NCCS" or "Plaintiff"), by its undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits this Memorandum in Support of Motion for Partial Summary Judgment (the "Memorandum") and states as follows:

**OVERVIEW**

     NCCS is entitled to partial summary judgment declaring that the United States of America (alternatively, "USA" or "Defendant") abused its discretion by revoking retroactively Plaintiff's tax-exempt status under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"). While Plaintiff vigorously opposes the Defendant's erroneous determination that Plaintiff's tax-exempt status should be revoked, assuming *arguendo* that the facts at bar justify a revocation of NCCS's tax exempt status, such revocation may be applied only prospectively. Retroactive revocation of NCCS's tax-exempt status contravenes laws and regulations, including without limitation, the Treasury Regulations promulgated under the Code,

the Defendant's own Revenue Procedures and General Counsel Memoranda, and a seminal decision by the United States Court of Appeals for the Third Circuit.  In particular, retroactive revocation is impermissible because NCCS did not operate in a manner materially different from that originally represented to the United States Internal Revenue Service (the "IRS") in its Form 1023 as supplemented by its Forms 990, and did not misstate any material facts therein.  In addition, NCCS was entitled to, and in fact did, rely in good faith upon the determination of tax exemption issued to it by the IRS, and there was no fraud on the part of NCCS estopping it from such good faith reliance.  Accordingly, even if permissible, the effective date of any revocation of Plaintiff's tax exempt status cannot, under any circumstances, be earlier than November 3, 2004, the date upon which the IRS first provided written notice of its contention that NCCS's tax-exempt status should be revoked.[1]  This Memorandum presents these arguments in further detail.


## UNDISPUTED FACTS

NCCS was formed as a Maryland nonstock corporation on December 18, 1992, and was organized for one or more purposes specified in Section 501(c)(3) of the Code.  *See* Affidavit of Etta Money in Support of Plaintiff's Motion for Partial Summary Judgment (the "Money Affidavit") at ¶ 5.  The Money Affidavit is attached hereto and incorporated herein by reference as **Exhibit 1**.

In 1993, Plaintiff petitioned the IRS for recognition of tax-exempt status under Code Section 501(a) as an organization described in Code Section 501(c)(3), by filing a Form 1023, Application for Recognition of Exemption (the "Form 1023"), with the IRS. Money Affidavit at

---

[1]     *See* Treasury Regulation Section 601.201(n)(6)(i).  Even if a revocation of Plaintiff's exempt status could be retroactive and November 3, 2004 is not the proper date for such action, it is incomprehensible that the effective date of the revocation could precede the IRS's commencement of its examination of NCCS, April 15, 2003.

¶ 6.   A true and accurate copy of the Form 1023 is attached hereto and incorporated herein by reference as **Exhibit 2**.[2]   Money Affidavit at ¶ 6.   In the Form 1023, Plaintiff represented its purposes as follows:

- educate the public on a variety of financial issues, with special attention to educating families and individuals on personal budgeting and the wise use of credit;

- help families and individuals with current financial difficulties, through sound budget or spending planning, and educate them on how to avoid future financial difficulties; and

- if a family or an individual is having financial problems that are beyond the scope of sound budgeting techniques, a counselor will set up a debt management plan for the orderly liquidation of the debt as a viable alternative to bankruptcy.

*See* Exhibit 2 at 3; Money Affidavit at ¶ 6.

The IRS issued a favorable determination letter (dated April 12, 1993) to Plaintiff recognizing NCCS as exempt from federal income tax under Code Section 501(a) as an organization described in Code Section 501(c)(3) (the "Determination Letter"). Money Affidavit at ¶ 8.   A true and accurate copy of the Determination Letter is attached hereto and incorporated herein by reference as **Exhibit 3**. Money Affidavit at ¶ 8.

In late 1996 and early 1997, the IRS conducted an examination of Plaintiff's Form 990 (Return of Organization Exempt from Income Tax) for the tax year ending December 31, 1993. Money Affidavit at ¶ 9.   The IRS did not issue any changes or adverse determinations to Plaintiff with regard to that examination. Money Affidavit at ¶ 9.

---

[2]   The copy of Plaintiff's Form 1023 attached hereto as Exhibit 2 was obtained as part of the IRS's response to the FOIA Request (defined below) and is reproduced in the form provided by the IRS, including a number of pages that are unreadable.   It is Plaintiff's belief that such unreadable pages are not germane to the instant matter.

The IRS issued a letter (dated March 18, 1997) to NCCS stating that its exempt status under Code Section 501(a) as an organization described in Code Section 501(c)(3) was still in effect and that NCCS was determined to be a non-private foundation under Code Section 509(a)(1) (the "1997 Confirmation Letter"), a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 4**. Money Affidavit at ¶ 10.

After its review of a charter amendment submitted by Plaintiff, the IRS issued a letter, dated January 8, 1998, to Plaintiff confirming that its exempt status would continue (the "1998 Confirmation Letter"). Money Affidavit at ¶ 11. A true and accurate copy of the 1998 Confirmation Letter is attached hereto and incorporated herein by reference as **Exhibit 5**. Money Affidavit at ¶ 11.

After operating for several years, NCCS decided to explore pricing and service options for working with a service provider to perform certain functions relating to its operations. Money Affidavit at ¶ 12. In connection therewith, in 1998, Plaintiff obtained a study from the accounting firm of Arthur Andersen regarding contractors that could provide certain services relating to NCCS's operations and pricing for those services. Money Affidavit at ¶ 12.

Thereafter, on November 20, 1998, Plaintiff negotiated and executed a three (3) year service agreement (the "Service Agreement") with Amerix Corporation ("Amerix") replacing its prior agreement with Amerix. Money Affidavit at ¶ 13. The Arthur Andersen study demonstrated that the financial arrangements provided in the Service Agreement were fair and reasonable to Plaintiff, and that the best choice for the provider of the needed services at that time was Amerix. Money Affidavit at ¶ 13.

NCCS filed an accurate and complete Form 990 for the tax year 1997 on September 17, 1998. *See* Plaintiff's 1997 Form 990, a true and accurate copy of which is attached hereto and

incorporated by reference as **Exhibit 6**. Money Affidavit at ¶ 14.

NCCS fully disclosed to the IRS its relationship with Amerix on its Form 990 for the tax year 1997. Money Affidavit at ¶ 15.

NCCS filed an accurate and complete Form 990 for the tax year 1998 on August 11, 1999. *See* Plaintiff's 1998 Form 990, a true and accurate copy of which is attached hereto and incorporated by reference as **Exhibit 7**. Money Affidavit at ¶ 16.

NCCS fully disclosed to the IRS its relationship with Amerix on its Form 990 for the tax year 1998. Money Affidavit at ¶ 17.

On December 13, 1999, Plaintiff negotiated an amendment to the Service Agreement, the amendment provided for a one (1) year transition period to terminate material aspects of the services detailed under the Service Agreement (the "1999 Service Agreement Amendment"). Money Affidavit at ¶ 18.

NCCS filed an accurate and complete Form 990 for the tax year 1999 on November 14, 2000. *See* Plaintiff's 1999 Form 990, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 8**. Money Affidavit at ¶ 19.

NCCS fully disclosed to the IRS its relationship with Amerix on its Form 990 for the tax year 1999. Money Affidavit at ¶ 20.

During August, 2000, in accordance with the 1999 Service Agreement Amendment, Amerix stopped processing new accounts under the Service Agreement; Plaintiff continued providing education and counseling to its debt management program participants. Money Affidavit at ¶ 21.

NCCS filed an accurate and complete Form 990 for the tax year 2000 on November 15, 2001. *See* Plaintiff's 2000 Form 990, a true and accurate copy of which is attached hereto and

incorporated herein by reference as **Exhibit 9**. Money Affidavit at ¶ 22.

NCCS fully disclosed to the IRS its relationship with Amerix on its Form 990 for the tax year 2000. Money Affidavit at ¶ 23.

NCCS filed an accurate and complete Form 990 for the tax year 2001 on August 13, 2002. *See* Plaintiff's 2001 Form 990, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 10**. Money Affidavit at ¶ 24.

NCCS fully disclosed to the IRS its relationship with Amerix on its Form 990 for the tax year 2001. Money Affidavit at ¶ 25.

Thereafter, Plaintiff received a letter from the IRS, dated April 13, 2002, confirming that the charter amendment changing its name had been reviewed and that the Determination Letter issued to Plaintiff in April of 1993 remained effective (the "2002 Confirmation Letter"). Money Affidavit at ¶ 26.  A true and accurate copy of the 2002 Confirmation Letter is attached hereto and incorporated herein by reference as **Exhibit 11**. Money Affidavit at ¶ 26.

NCCS filed an accurate and complete Form 990 for the tax year 2002 on November 13, 2003. Money Affidavit at ¶ 27.

The IRS issued a letter, dated November 3, 2004, to NCCS stating that the IRS believed that its exempt status under Code Section 501(a) as an organization described in Code Section 501(c)(3) should be revoked, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 12**. Money Affidavit at ¶ 28.

NCCS's counsel, in a letter dated May 31, 2007, submitted a Freedom of Information Act ("FOIA") request to the IRS concerning all examination files and documents for tax years 2000-2002 for NCCS; and in a letter dated September 14, 2007, NCCS's counsel requested copies of all documents and materials related to the May 31, 2007 FOIA request which constitute agent's

notes, workpapers, internal and external memoranda and correspondence, etc. (collectively, the "FOIA Request"). Money Affidavit at ¶ 29.

On January 3, 2008, the IRS provided a partial response to the FOIA Request, including *inter alia*, a document entitled "EO Workpaper Summary" (IRS Form 5772) together with six (6) pages each entitled "EO Workpaper Summary Continuation Sheet" (IRS Form 5773), dated April 1, 2005, and prepared by "D. Waggoner" (the "Examination Results"). Money Affidavit at ¶ 30.[3] The Examination Results refer to the IRS's examination of Plaintiff, in particular, its examination of Plaintiff's Forms 990 for the tax years 2000, 2001 and 2002. Money Affidavit at ¶ 30.

In Item C.5 of the Examination Results, the IRS admits that it reviewed "numerous newsletters, educational printed materials, and [NCCS's] website." *See* Examination Results Excerpt, Item C.5, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 13**. Money Affidavit at ¶ 31.   The IRS also concluded that such newsletters, educational printed materials and website were "[h]igh quality publications [that] have ***abundant*** educational content." *See* Exhibit 13 [emphasis added]; Money Affidavit at ¶ 31.

In Item D.3 of the Examination Results, the IRS admits that the Forms 990 filed by NCCS for each of the applicable tax years were "complete and accurate."  *See* Examination Results Excerpt, Item D.3, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 14**. Money Affidavit at ¶ 32.

In Item F.1 of the Examination Results, the IRS admits that "[a]ll of [NCCS's] activities are related to [its] exempt function" and that "[t]here are no unrelated activities…"  *See*

---

[3]    True and accurate excerpts from the Examination Results are included as exhibits hereto as addressed. Money Affidavit at ¶ 30.

Examination Results Excerpt, Item F.1, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 15**. Money Affidavit at ¶ 33.

In Item I.1 of the Examination Results, the IRS admits that "NCCS has ***correctly*** filed all information returns." *See* Examination Results Excerpt, Item I.1 [emphasis added], a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 16**. Money Affidavit at ¶ 34.

In Item I.5 of the Examination Results, the IRS admits that its examination of NCCS's records and interviews with NCCS's officers revealed "no badges of fraud." *See* Examination Results Excerpt, Item I.5, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 17**. Money Affidavit at ¶ 35.

In Item J.4 of the Examination Results, the IRS admits that its "[r]eview of [NCCS's] financial records and interview [sic] revealed no indication of fraud." *See* Examination Results Excerpt, Item J.4, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 18**. Money Affidavit at ¶ 36.

During the applicable periods at issue, NCCS conducted activities not substantially different from those previously represented to the IRS on the Form 1023, namely: credit and debt counseling services (including budgeting and educational services to clients with credit problems); debt management services; enhancing the access to debt counseling services for Hispanic communities; education and training (including dissemination of educational information and seminars); and making educational grants in furtherance of its charitable and educational purposes. Money Affidavit at ¶ 37.

During the applicable periods at issue, NCCS was entitled to, and in fact did, rely in good faith upon the Determination Letter, the 1997 Confirmation Letter, the 1998 Confirmation Letter

and the 2002 Confirmation Letter. Money Affidavit at ¶ 38.

A revocation of Plaintiff's tax exempt status, retroactive or prospective, would be to the detriment of Plaintiff. Money Affidavit at ¶ 39.

## **ARGUMENT**

**A.    Summary Judgment Is Available When There Is No Genuine Issue Of Material Fact And The Movant Is Entitled To Judgment As A Matter Of Law.**

Upon a motion for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Furthermore, the non-movant has the burden of setting forth specific facts showing the existence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *see also Celotex v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Briggs v. WMATA*, 481 F.3d 839, 843 (D.C. Cir. 2007).  At bar, as there is no genuine issue of material fact that Plaintiff properly reported its activities on the Form 1023 to the Defendant, Plaintiff received the Determination Letter, in which the Defendant rendered a favorable determination regarding Plaintiff's tax-exempt status under Section 501(c)(3) of the Code, and at all times during the applicable periods at issue, Plaintiff operated in a manner which is substantially in accordance with the activities described in the Form 1023 as supplemented by its Forms 990.  Likewise, no genuine issue of material fact exists that to the extent that NCCS's activities and/or operations had substantially changed in relation to those described in the Form 1023 during the applicable periods at issue, NCCS properly disclosed all such changes to the

Defendant on its Forms 990, and Plaintiff conducted all activities in furtherance of its educational and charitable purposes.  Therefore, partial summary judgment should be granted as prayed in the underlying Motion.

**B.    The Standard Of Review Regarding The IRS's Retroactive Revocation Of NCCS'S Tax-Exempt Status Is Abuse Of Discretion.**

Under Section 7805(b)(8) of the Code, the IRS has the discretion to revoke a ruling regarding an organization's tax-exempt status prospectively or retroactively.  *See* §7805(b)(8) of the Code; Treas. Reg. §301.7805-1(b).  Accordingly, the standard of review regarding the IRS's decision retroactively to revoke such a ruling is abuse of discretion. *Automobile Club of Mich. v. Comm'r*, 353 U.S 180 (1957); *Dixon v. United States*, 381 U.S. 68 (1965).

**C.    The Applicable Treasury Regulations And The IRS's Own Revenue Procedures And General Counsel Memoranda Support Plaintiff's Contention That The IRS's Attempt To Revoke Retroactively Its Exempt Status Is Impermissible As A Matter Of Law Thus Constituting An Abuse Of Discretion.**

No fewer than four key authorities reject Defendant's retroactive revocation of NCCS tax exempt status.

First, Section 1.501(a)-1(a)(2) of the Treasury Regulations makes clear Plaintiff has a right to rely upon the IRS's determination that it is exempt from federal income tax under Section 501(a) of the Code.  It provides in relevant part:

> Subject only to the Commissioner's inherent power to revoke rulings because of a change in the law or regulations or for other good cause, an organization that has been determined by the Commissioner of the district director to be exempt under section 501(a) or the corresponding provision of prior law may rely upon such determination so long as there are no substantial changes in the organization's character, purposes, or methods of operation.

Treas. Reg. §1.501(a)-1(a)(2).  *See also* General Counsel Memorandum 39866, fn. 3 (1991).

Furthermore, Section 601.201 of the Treasury Regulations expressly provides limits under which a revocation of an organization's exempt status may be made retroactively. Specifically, Treasury Regulation Section 601.201(n)(6)(i) reads, in relevant part, as follows:

> An exemption or determination letter may be revoked or modified by a ruling or determination letter addressed to the organization, or by a revenue ruling or other statement published in the Internal Revenue Bulletin.  The revocation or modification may be retroactive if the organization omitted or misstated a material fact [or] operated in a manner materially different from that originally represented…[4]

Treas. Reg. §601.201(n)(6)(i).

The IRS's own Revenue Procedure confirms the foregoing limitations regarding whether a revocation or modification of exempt status may be made retroactively.  Section 14.01 of Revenue Procedure 90-27[5] provides, in relevant part, as follows:

> The revocation or modification may be retroactive if the organization omitted or misstated a material fact [or] operated in a manner materially different from that originally represented…[6]

Rev. Proc. 90-27 §14.01, 1990-1 CB 514.  *See also* General Counsel Memorandum 39866, fn. 3 (1991).

---

[4]    The remaining language of Treasury Regulation Section 601.201(n)(6)(i) makes reference to certain prohibited transactions by organizations subject to the provisions of Section 503 of the Code.  NCCS is not an organization subject to the provisions of Section 503 of the Code; therefore, those provisions are not germane to the instant matter.

[5]    Effective in July 23, 2007, Revenue Procedure 90-27 was superseded by Revenue Procedure 2007-52, which does not substantively change the language cited from Revenue Procedure 90-27 herein.  *See* Rev. Proc. 2007-52, 2007-30 I.R.B. 1, Section 12.  Notwithstanding the foregoing, because Revenue Procedure 2007-52 was not effective until July 23, 2007, a date which follows Defendant's revocation at issue in the instant case, Revenue Procedure 90-27 remains controlling in respect of such issue.

[6]    As with Treasury Regulation Section 601.201(n)(6)(i), the remaining language of Section 14.01 of Revenue Procedure 90-27 makes reference to certain prohibited transactions by organizations subject to the provisions of Section 503 of the Code.  *See* footnote 3, *supra*.

Accordingly, under the Treasury Regulations and the IRS's own Revenue Procedures and General Counsel Memoranda, Plaintiff is entitled to rely upon the continuing validity of the IRS's original determination that it is exempt from Federal income taxes under Section 501(c)(3) of the Code during the applicable periods at issue because there have been no substantial changes in Plaintiff's character, purposes or methods of operations that were not properly reported to the IRS on Form 990.  Moreover, the IRS cannot make a retroactive revocation because NCCS neither omitted or misstated a material fact nor operated in a manner materially different from that originally represented, or as properly reported on its Forms 990, to the IRS.  The undisputed facts support Plaintiff's contention that as a matter of law the IRS may not revoke Plaintiff's tax exempt status retroactively.

The relevant line in the Form 990 relating to the required reporting discussed herein is Line 76, which reads "Did the organization engage in any activity not previously reported to the IRS?"  If the answer to the foregoing question is in the affirmative, the organization is directed to attach a detailed description of each such activity.  In no place on the Form 990, however, is there a requirement to report, in detail or otherwise, changes in an organization's method of operations.

While Plaintiff's relationship with Amerix under the Service Agreement could be argued to represent, at most, a change in its methods of operations, the same is not a change in Plaintiff's activities.  At all times during the applicable periods at issue, Plaintiff continued to engage in the activities previously represented to the IRS on the Form 1023, namely: credit and debt counseling services (including budgeting and educational services to clients with credit problems); debt management services; enhancing the access to debt counseling services for Hispanic communities; education and training (including dissemination of educational information and seminars); and making educational grants in furtherance of its charitable and educational

purposes. Money Affidavit at ¶ 37. The Service Agreement merely allowed NCCS to outsource certain operational components of its counseling and debt management services, in an effort to gain efficiencies so as to better serve its financially-distressed clients; it did not change the nature of Plaintiff's activities as previously reported to the IRS. The IRS concedes the foregoing by concluding in the Examination Results that, during the applicable periods at issue, all of NCCS's activities were related to its exempt function and that there were no unrelated activities. *See* Examination Results Excerpt, Item F.1, Exhibit 15 ("[a]ll of [NCCS's] activities are related to [its] exempt function" and that "[t]here are no unrelated activities…"). In the instant case, the distinction between a change in activity and a change in operations is significant – one (change of activity) requires a detailed reporting to the IRS on Form 990, and the other (change of operations) does not.

Notwithstanding the foregoing, Plaintiff fully disclosed its relationship with Amerix on its Forms 990 for tax years 1997-2001, listing the relationship and amounts paid to Amerix thereunder clearly on Part II or Schedule A.[7] *See, e.g.*, 1997-2001 Forms 990, Exhibits 6-10, respectively. Specifically, Plaintiff's relationship with Amerix is clearly disclosed in Part II of Schedule A to its Forms 990 for the tax years 1997-2001, and is also disclosed in Part III of Schedule A to its Forms 990 for tax years 1997-1999. Each disclosure contained in Part II of Schedule A clearly identified Amerix as a third-party providing computer and management services (1997 and 1998 Forms 990), and payment processing (1999, 2000 and 2001 Forms 990),

---

[7]    Further, such disclosure by Plaintiff was more than adequate to report completely the existence and nature of its arrangement with Amerix because this type of arrangement was not unique among tax-exempt credit counseling organizations during the applicable periods at issue. Plaintiff has identified at least one other similar arrangement reported to the IRS on the 1999 Form 990 filed by a tax-exempt credit counseling organization: Consumer Education Services, Inc., EIN: 56-2106758, which organization as of the date hereof remains recognized as exempt from federal income tax under Section 501(c)(3) of the Code. *See* Exhibit 19 attached hereto.

and each such disclosure contained the amounts paid by Plaintiff to Amerix during the applicable year.

In addition, the disclosures in Schedule A, Part III (made in connection with question 2 thereof) stated that, during the applicable year, Plaintiff was provided services from Amerix, an organization that provided management services to non-profit credit counseling organizations, and that Amerix was majority owned by the then-president (1997) and, thereafter the former president (1998 and 1999) of Plaintiff, and that Plaintiff subleased equipment and facilities to Amerix, and that Amerix purchased certain equipment, leasehold improvements and workforce from Plaintiff.

Given the totality of the disclosures from Plaintiff to the IRS, including without limitation, the significant amounts paid to Amerix during the applicable periods at issue, and the market environment within which each of Plaintiff's Forms 990 were filed, there can be no doubt that the IRS was informed fully and completely of Plaintiff's relationship with Amerix. Plaintiff in no way concealed or omitted any material fact from the IRS regarding its relationship with Amerix, the IRS was put on notice about Plaintiff's relationship with Amerix and the IRS issued the 2002 Confirmation Letter without raising any issues regarding Plaintiff's relationship with Amerix.

In sum, Plaintiff did not change its activities during the applicable periods at issue and continued to provide counseling and education to financially-distressed individuals. *See* Examination Results Excerpt, Item C.5, Exhibit 13 (IRS reviewed "numerous newsletters, educational printed materials, and [NCCS's] website" and same were "[h]igh quality publications [that] have abundant educational content"). Additionally, it is clear that Plaintiff disclosed more than was required in its Forms 990 regarding its relationship with Amerix and, accordingly, its

Forms 990 were complete and accurate for each of the applicable years.  Moreover, the IRS admits in the Examination Results that Plaintiff's Forms 990 filed for the applicable tax years were complete and accurate and correctly filed. *See* Examination Results Excerpt, Item D.3, Exhibit 14 (NCCS's Forms 990 for each of the applicable tax years were "complete and accurate.") and Examination Results Excerpt, Item I.1, Exhibit 16 ("NCCS has correctly filed all information returns.").  Consequently, retroactive revocation by the IRS in the instant case constitutes an abuse of discretion.


**D.**    **There Is Ample Case Law Supporting The Position That The IRS Cannot Arbitrarily Retroactively Revoke An Organization's Exemption That Is Based On A Previously Issued Ruling.**

At least one court squarely recognized that the IRS cannot retroactively revoke an entity's tax exemption when the entity had operated in reliance upon a favorable determination issued years earlier and is consistent with the intent behind the aforementioned Treasury Regulations, Revenue Procedures and General Counsel Memoranda. *See Lesavoy Found. v. Comm'r*, 238 F.2d 589 (3d Cir. 1957), *rev'g* 25 T.C. 924 (1956) (and cases cited therein).  In *Lesavoy*, the court held the Commissioner abused his discretion in revoking a foundation's exempt status in circumstances similar to those at bar.  Specifically, *Lesavoy* involved a foundation that was organized for charitable, educational and philanthropic purposes, and which foundation was granted a certificate of exemption from taxation under Section 101(6) of the Internal Revenue Code of 1939 (the then-equivalent of Section 501(c)(3) of the Code). *Id.* at 590.  A year after receiving its exemption, the foundation acquired a manufacturer of cotton yarn and cloth, which entity assisted the profit-making enterprises of the foundation's donors. *Id.*  The income of the cotton yarn/cloth manufacturer, however, was devoted to the charitable purposes of the

foundation. *Id.* In the year the foundation acquired the spinning business, it fully disclosed to the IRS the acquisition of the yarn/cloth manufacturer and that it was engaged in an active textile business as required by the information reporting form then in use. *Id.* at 592. The foundation did not misstate anything it disclosed in its information report to the IRS[8] or omit to disclose anything, including its relationship with the foundation's donors. *Id.* Six years after granting the exemption, the IRS attempted to revoke, retroactively, the foundation's exemption to the year in which the textile enterprise was acquired. *Id.* at 590.

The *Lesavoy* court reversed the Commissioner's revocation of the exemption. *Id.* at 594. The court explained that, except where the taxpayer is estopped from relying on the ruling in good faith because of fraud, the Commissioner may not retroactively change an individualized taxpayer's ruling *Id.* at 592. While the Commissioner had revoked the foundation's exempt status based on the Commissioner's finding that the foundation departed from its exempt purpose and was used, in part, as a means of furthering business enterprises through its purchase of the spinning mill, the Third Circuit reversed the Tax Court, finding that the Commissioner had abused its discretion in retroactively revoking the foundation's exempt status. *Id.* at 594. The *Lesavoy* court found it troubling that, having changed its mind about the exempt status of the foundation, the Commissioner "may arbitrarily and without limit have the effect of that change go back over previous years during which the taxpayer operated under the previous ruling." *Id.* at 591.

At bar, there was no fraud – indeed, the IRS concedes that there was no fraud as evidenced by its admissions in the Examination Results. *See* Examination Results Excerpt, Item

---

[8]    The foundation did not specifically disclose that its spinning mill sold yarn to its donors, but did identify contributors who were obviously in the fabric/mill industry.

I.5, Exhibit 17 ("no badges of fraud"); Examination Results Excerpt, Item J.4, Exhibit 18 ("[r]eview of [NCCS's] financial records and interview [sic] revealed no indication of fraud"). Therefore, NCCS is not estopped from relying in good faith upon its ruling of tax exemption as evidenced by the Determination Letter, the 1997 Confirmation Letter, the 1998 Confirmation Letter and the 2002 Confirmation Letter.

*Lesavoy* acknowledges that the IRS may change its position regarding a matter of fact or law, but it also stands for the proposition that the IRS, having made such a change, may not "arbitrarily and without limit have the effect of that change go back over previous years during which the taxpayer operated under the previous ruling." *Id.* After analyzing other positions espoused in other authorities, including from other districts, the *Lesavoy* court chose to follow the line of authorities supporting its holding that the IRS "may not retroactively change an individualized taxpayer's ruling, unless the taxpayer is himself estopped from relying on the ruling in good faith because he has concealed the facts, or because of some other fraud or misrepresentation." *Id.* at 592. In the instant case, no fact has been alleged or disputed under which Plaintiff would be estopped from relying, in good faith, on its original exemption ruling (as subsequently confirmed).

As discussed above, the relevant line in the Form 990 relating to the required reporting discussed herein is Line 76, which reads "Did the organization engage in any activity not previously reported to the IRS?" If the answer to the foregoing question is in the affirmative, the organization is directed to attach a detailed description of each such activity. Again, in no place on the Form 990 is there a requirement to report, in detail or otherwise, changes in an organization's method of operations.

Even if Plaintiff's relationship with Amerix under the Service Agreement could be argued

to represent a change in its methods of operations, the same was not a change in Plaintiff's activities.  At all times during the applicable periods at issue, Plaintiff continued to engage in the activities previously represented to the IRS on the Form 1023, namely, providing credit and debt counseling services (including budgeting and educational services to clients with credit problems), debt management services, enhancing the access to debt counseling services for Hispanic communities, education and training (including dissemination of educational information and seminars); and making educational grants in furtherance of its charitable and educational purposes. Money Affidavit at ¶ 37.  The IRS concedes the foregoing by concluding in the Examination Results that all of NCCS's activities are related to its exempt function and that there are no unrelated activities. *See* Examination Results Excerpt, Item C.5, Exhibit 13 (IRS reviewed "numerous newsletters, educational printed materials, and [NCCS's] website" and same were "[h]igh quality publications [that] have abundant educational content"); *see also* Examination Results Excerpt, Item F.1, Exhibit 15 ("[a]ll of [NCCS's] activities are related to [its] exempt function" and that "[t]here are no unrelated activities…").  The Service Agreement merely allowed NCCS to outsource certain operational components of its counseling and debt management services in an effort to gain efficiencies so as to better serve its financially-distressed clients; it did not change the nature of Plaintiff's activities as previously reported to the IRS.  Notwithstanding that a change in operations does not require disclosure, as opposed to a change in activities, Plaintiff fully disclosed its relationship with Amerix on its Forms 990 for tax years 1997-2001, listing the relationship and amounts paid to Amerix thereunder clearly on Part II or Schedule A.[9]  Moreover, the IRS admits in the Examination Results that Plaintiff's Forms 990 filed for the applicable tax years were complete and accurate and correctly filed. *See*

---

[9]    *See* footnote 5, *supra*.

Examination Results Excerpt, Item D.3, Exhibit 14 (NCCS's Forms 990 for each of the applicable tax years were "complete and accurate.") and Examination Results Excerpt, Item I.1, Exhibit 16 ("NCCS has correctly filed all information returns.").

The openness that Plaintiff exhibited toward the IRS regarding its disclosures on its Forms 990 is in stark contrast to the actions/omissions of the tax-exempt organization in *Stevens Bros. Found., Inc. v. Comm'r*, 324 F.2d 633 (8th Cir. 1963). *Stevens Bros.* involved a foundation that, among other things, had its tax-exempt status under Section 101(6) of the Internal Revenue Code of 1939 (the then-equivalent of Section 501(c)(3) of the Code) revoked retroactively because, as a result of a change in its activities, it was not operated exclusively for charitable purposes. *Id*. at 635. The *Stevens Bros.* court found, in relevant part, unlike the facts in the instant case, that the foundation engaged in activities which had not been previously reported to the IRS, and the foundation failed to answer the question (and attach the required detailed statement) contained in its information return regarding same. *Id.* at 641. As clearly set forth hereinabove, for years before and during the applicable periods at issue, Plaintiff did not have changes in its activities that required a detailed reporting in its Form 990. Nevertheless, Plaintiff fully disclosed its relationship with Amerix and concealed nothing with regard thereto. Consequently, retroactive revocation of NCCS's exemption cannot stand and the IRS's retroactive revocation in the instant case constitutes an abuse of discretion.

## **CONCLUSION**

In light of the foregoing, the Court should grant NCCS's Motion for Partial Summary Judgment, and declare that regardless of whether revocation of Plaintiff's tax exempt status is/was appropriate, such revocation cannot be earlier than the date upon which the IRS commenced its examination of Plaintiff – November 3, 2004, and Plaintiff respectfully requests that this Court grant such other relief as this Court deems just and proper under the circumstances.

/s/Gary S. Posner_____
Gary S. Posner  (Bar I.D. No. MD05863)
Whiteford, Taylor & Preston L.L.P.
7 Saint Paul Street
Baltimore, Maryland  21202-1626
Tel (410) 347-8700
Fax (410) 752-7092
*E-mail*: gposner@wtplaw.com


/s/Jonathan Z. May_____
Jonathan Z. May (Bar I.D. No. 495031)
Robert D. Earle (Bar I.D. No. 449012)
Whiteford, Taylor & Preston L.L.P.
50  Corporate Center
10500 Little Patuxent Parkway, Ste. 750
Columbia, Maryland 21044-3585
Tel (410) 884-0700
Fax (410) 884-2451
*E-mail:*  jmay@wtplaw.com

Attorneys for Plaintiff,
     National Credit Counseling Services, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of February, 2008, a copy of the foregoing, along with the Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment thereof including the attached List of Exhibits and Exhibits, was sent electronically, via the Court's ECF System, and via first class United States mail, postage prepaid, to:

Lawrence P. Blaskopf
Benjamin J. Weir
Civil Trial Section, Eastern Region
U.S. Department of Justice, Tax Division
P.O. Box 227
Washington, D.C.  20044


/s/Gary S. Posner
Gary S. Posner

1751703

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL CREDIT COUNSELING                    *
SERVICES, INC.

    Plaintiff                    *

v.                                             *    Civil Action No: 1:06 CV 02028 RBW

UNITED STATES OF AMERICA                       *

    Defendant                    *

  *  *  *  *  *  *  *  *  *  *  *

**LIST OF EXHIBITS IDENTIFIED IN MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

EXHIBIT 1: Affidavit of Etta Money

EXHIBIT 2: Form 1023

EXHIBIT 3: Determination Letter

EXHIBIT 4: March 18, 1997 Confirmation Letter

EXHIBIT 5: January 8, 1998 Confirmation Letter

EXHIBIT 6: 1997 Form 990

EXHIBIT 7: 1998 Form 990

EXHIBIT 8: 1999 Form 990

EXHIBIT 9: 2000 Form 990

EXHIBIT 10: 2001 Form 990

EXHIBIT 11: April 13, 2002 Confirmation Letter

EXHIBIT 12: November 3, 2004 Letter

EXHIBIT 13: Examination Results Excerpt, Item C.5

EXHIBIT 14: Examination Results Excerpt, Item D.3

EXHIBIT 15: Examination Results Excerpt, Item F.1

EXHIBIT 16: Examination Results Excerpt, Item I.1

EXHIBIT 17: Examination Results Excerpt, Item I.5

EXHIBIT 18: Examination Results Excerpt, Item J.4

EXHIBIT 19: Consumer Education Services, Inc. – 1999 From 990