# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL CREDIT COUNSELING SERVICES, INC. | * |
| Plaintiff | * |
| v. | * Civil Action No: 1:06 CV 02028 RBW |
| UNITED STATES OF AMERICA | * |
| Defendant | * |

*   *   *   *   *   *   *   *   *   *   *

**AFFIDAVIT OF ETTA MONEY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1. I, Etta Money, am over eighteen (18) years of age, and am competent to testify as to the matters set forth herein.

2. I served as an officer or trustee of National Credit Counseling Services, Inc. (alternatively, "NCCS" or the "Plaintiff") during the applicable period of 1997 through 2002, and currently am the President of NCCS.

3. I am familiar with the operations of NCCS and the history of the operations, over the years from 1997 to 2002. Also, I have read the Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, along with the exhibits attached thereto.

4. The documents attached as Exhibits 2 to 18 to the Memorandum in Support of Plaintiff's Motion for Summary Judgment (the "Memorandum in Support") are true and accurate copies of the document they purport to be from the files maintained in the ordinary course of business of NCCS, maintained under my custody and control.

- 2 -

5.  NCCS was formed as a Maryland nonstock corporation on December 18, 1992, and was organized for one or more purposes specified in Section 501(c)(3) of the Code.

6.  In 1993, Plaintiff petitioned the IRS for recognition of tax-exempt status under Code Section 501(a) as an organization described in Code Section 501(c)(3), by filing a Form 1023, Application for Recognition of Exemption (the "Form 1023"), with the IRS, a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 2**.

7.  In the Form 1023, Plaintiff represented its purposes as follows:

- educate the public on a variety of financial issues, with special attention to educating families and individuals on personal budgeting and the wise use of credit;

- help families and individuals with current financial difficulties, through sound budget or spending planning, and educate them on how to avoid future financial difficulties; and

- if a family or an individual is having financial problems that are beyond the scope of sound budgeting techniques, a counselor will set up a debt management plan for the orderly liquidation of the debt as a viable alternative to bankruptcy.

8.  The IRS issued a favorable determination letter (dated April 12, 1993) to Plaintiff recognizing NCCS as exempt from federal income tax under Code Section 501(a) as an organization described in Code Section 501(c)(3) (the "Determination Letter"), a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 3**.

9.  In late 1996 and early 1997, the IRS conducted an examination of Plaintiff's Form 990 (Return of Organization Exempt from Income Tax) for the tax year ending December 31, 1993. The IRS did not issue any changes or adverse determinations to Plaintiff with regard to that examination.

10. The IRS issued a letter (dated March 18, 1997) to NCCS stating that its exempt

status under Code Section 501(a) as an organization described in Code Section 501(c)(3) was still in effect and that NCCS was determined to be a non-private foundation under Code Section 509(a)(1) (the "1997 Confirmation Letter"), a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 4**.

11. After its review of a charter amendment submitted by Plaintiff, the IRS issued a letter, dated January 8, 1998, to Plaintiff confirming that its exempt status would continue (the "1998 Confirmation Letter"), a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 5**.

12. After operating for several years, NCCS decided to explore pricing and service options for working with a service provider to perform certain functions relating to its operations. In connection therewith, in 1998, Plaintiff obtained a study from the accounting firm of Arthur Andersen regarding contractors that could provide certain services relating to NCCS's operations and pricing for those services.

13. Thereafter, on November 20, 1998, Plaintiff negotiated and executed a three (3) year service agreement (the "Service Agreement") with Amerix Corporation ("Amerix") replacing its prior agreement with Amerix. The Arthur Andersen study demonstrated that the financial arrangements provided in the Service Agreement were fair and reasonable to Plaintiff, and that the best choice for the provider of the needed services at that time was Amerix.

14. NCCS filed an accurate and complete Form 990 for the tax year 1997 on September 17, 1998, a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 6**.

15. NCCS fully disclosed to the IRS its relationship with Amerix on its Form 990 for the tax year 1997.

16. NCCS filed an accurate and complete Form 990 for the tax year 1998 on August 11, 1999, a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 7**.

17. NCCS fully disclosed to the IRS its relationship with Amerix on its Form 990 for the tax year 1998.

18. On December 13, 1999, Plaintiff negotiated an amendment to the Service Agreement, the amendment provided for a one (1) year transition period to terminate material aspects of the services detailed under the Service Agreement (the "1999 Service Agreement Amendment").

19. NCCS filed an accurate and complete Form 990 for the tax year 1999 on November 14, 2000, a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 8**.

20. NCCS fully disclosed to the IRS its relationship with Amerix on its Form 990 for the tax year 1999.

21. During August, 2000, in accordance with the 1999 Service Agreement Amendment, Amerix stopped processing new accounts under the Service Agreement; Plaintiff continued providing education and counseling to its debt management program participants.

22. NCCS filed an accurate and complete Form 990 for the tax year 2000 on November 15, 2001, a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 9**.

23. NCCS fully disclosed to the IRS its relationship with Amerix on its Form 990 for the tax year 2000.

24. NCCS filed an accurate and complete Form 990 for the tax year 2001 on August

13, 2002, a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 10**.

25. NCCS fully disclosed to the IRS its relationship with Amerix on its Form 990 for the tax year 2001.

26. Plaintiff received a letter from the IRS, dated April 13, 2002, confirming that the charter amendment changing its name had been reviewed and that the Determination Letter issued to Plaintiff in April of 1993 remained effective (the "2002 Confirmation Letter"), a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 11**.

27. NCCS filed an accurate and complete Form 990 for the tax year 2002 on November 13, 2003.

28. The IRS issued a letter, dated November 3, 2004, to NCCS stating that the IRS believed that its exempt status under Code Section 501(a) as an organization described in Code Section 501(c)(3) should be revoked, a true and accurate copy of which is attached to the Memorandum in Support as **Exhibit 12**.

29. NCCS's counsel, in a letter dated May 31, 2007, submitted a Freedom of Information Act ("FOIA") request to the IRS concerning all examination files and documents for tax years 2000-2002 for NCCS; and in a letter dated September 14, 2007, NCCS's counsel requested copies of all documents and materials related to the May 31, 2007 FOIA request which constitute agent's notes, workpapers, internal and external memoranda and correspondence, etc. (collectively, the "FOIA Request").

30. On January 3, 2008, the IRS provided a partial response to the FOIA Request, including *inter alia*, a document entitled "EO Workpaper Summary" (IRS Form 5772) together with six (6) pages each entitled "EO Workpaper Summary Continuation Sheet" (IRS Form

5773), dated April 1, 2005, and prepared by "D. Waggoner" (the "Examination Results"). True and accurate excerpts from the Examination Results are included as exhibits to the Memorandum in Support as addressed therein, as more specifically identified therein and in this Affidavit. The Examination Results refer to the IRS's examination of Plaintiff, in particular, its examination of Plaintiff's Forms 990 for the tax years 2000, 2001 and 2002.

31.    In Item C.5 of the Examination Results, the IRS admits that it reviewed "numerous newsletters, educational printed materials, and [NCCS's] website", a true and accurate copy of which excerpt is attached to the Memorandum in Support as **Exhibit 13**. The IRS also concluded that such newsletters, educational printed materials and website were "[h]igh quality publications [that] have *abundant* educational content" [emphasis added], a true and accurate copy of which excerpt is attached to the Memorandum in Support as Exhibit 13.

32.    In Item D.3 of the Examination Results, the IRS admits that the Forms 990 filed by NCCS for each of the applicable tax years were "complete and accurate", a true and accurate copy of which excerpts are attached to the Memorandum in Support as **Exhibit 14**.

33.    In Item F.1 of the Examination Results, the IRS admits that "[a]ll of [NCCS's] activities are related to [its] exempt function" and that "[t]here are no unrelated activities…", a true and accurate copy of which excerpts are attached to the Memorandum in Support as **Exhibit 15.**

34.    In Item I.1 of the Examination Results, the IRS admits that "NCCS has *correctly* filed all information returns" [emphasis added], a true and accurate copy of which excerpt is attached to the Memorandum in Support as **Exhibit 16**.

35.    In Item I.5 of the Examination Results, the IRS admits that its examination of NCCS's records and interviews with NCCS's officers revealed "no badges of fraud", a true and

36. In Item J.4 of the Examination Results, the IRS admits that its "[r]eview of [NCCS's] financial records and interview [sic] revealed no indication of fraud", a true and accurate copy of which excerpt is attached to the Memorandum in Support as **Exhibit 18**.

37. During the applicable periods at issue, NCCS conducted activities not substantially different from those previously represented to the IRS on the Form 1023, namely: credit and debt counseling services (including budgeting and educational services to clients with credit problems); debt management services; enhancing the access to debt counseling services for Hispanic communities; education and training (including dissemination of educational information and seminars); and making educational grants in furtherance of its charitable and educational purposes.

38. During the applicable periods at issue, NCCS was entitled to, and in fact did, rely in good faith upon the Determination Letter, the 1997 Confirmation Letter, the 1998 Confirmation Letter and the 2002 Confirmation Letter.

39. A revocation of Plaintiff's tax exempt status, retroactive or prospective, would be to the detriment of Plaintiff.

I DECLARE under the penalty of perjury that the foregoing is true and correct. Executed on: 1/29/08.

_____
ETTA MONEY

1772273