# EXHIBIT 2

## PART 14

direct costs of messenger services, parking, mailing, packaging, shipping, taxes and duties, and telephone calls and telegrams incurred by the Agency in connection with the performance of this agreement.

(c) <u>Travel</u>. The Advertiser shall pay all of the Agency's costs for any necessary traveling done on behalf of the Advertiser other than travel between the office of the Agency and the office of the Advertiser.

(d) <u>Agency materials</u>. The Advertiser agrees to pay the Agency for all miscellaneous supplies (such as normal copying and NCR forms), art supplies, postage (not including excessive postage for direct mail) and phone calls as they relate to printed, published or broadcast jobs in an amount not to exceed 10% of the job's direct cost which amount is in addition to the direct cost. Such amount is not subject to Agency mark-up as defined in paragraph 5. The Agency will determine the materials cost per job by its complexity, and apply up to 10% of the job's overall direct cost, in addition to the direct cost, to cover the material's cost.

(e) <u>Adjustments</u>. If media or other charges increase or decline after the Agency has submitted an estimate, the Advertiser shall pay for such increase or be given a credit for such reduction, as the case may be. If the amount of space or time or other advertising services actually used are less than those previously contracted for, the Advertiser shall pay for any increased rate charged by the media due to loss of volume

4

discount or because of higher scheduled rates. If additional space or time or services are so used, thereby resulting in a lower rate, the Advertiser shall make payments at such lower rate.

(f) <u>Cancellations.</u> If the Advertiser, after having approved any planned advertising, cancels all or any part thereof, the Advertiser shall pay for all costs incurred therefore to the date of cancellation and any unavoidable costs incurred thereafter, including any non-cancellable commitments for time or space. The Agency shall receive its standard commission on all such costs incurred.

5. <u>Agency's compensation.</u>

(a) <u>Commission on gross charges.</u> The Agency shall receive a commission of 15 percent of the gross charges made by the advertising media for time or space used by the Advertiser except with respect to outdoor advertising for which the Agency's commission shall be 16 2/3 percent of the gross charges. In the case of media not allowing commissions at the above rates, the Advertiser shall pay to the Agency an amount which, together with any commission allowed, will yield the Agency an amount equal to 15 percent of the gross charges.

(b) <u>Commission on other charges.</u> The Agency shall receive a commission of 20 percent of the charges made by third parties with whom the Agency has contracted for products or services which are to be used to implement the advertising proposals

approved by the Advertiser.

(c) <u>Special services fee</u>. The Advertiser shall pay the Agency a fee to be determined by the parties for any special services not usually included within the scope of this type of agreement by the Agency. The Agency shall present the Advertiser with an estimate therefore, as provided in paragraph three.

(d) <u>Compensation</u>.

The Advertiser shall pay the agency for public relations services at the agency's prevailing hourly rates see appendix, (including conferences, writing time, planning, administration, coordination of special events, and press relations).

<u>Advertising</u>. The Advertiser shall additionally pay agency fees for advertising services including creative direction, art direction, mechanical art, copy, account service, media audits and traffic/production according to the hourly rate scheduled for agency time billable (see appendix).

6. <u>Billing and payment</u>.

(a) <u>Form</u>. The Agency shall bill the Advertiser on the Agency's standard forms in conformity with the standards recommended by the American Association of Advertising Agencies.

(b) <u>Estimated and final bills</u>. Bills estimating costs may be preliminarily used, but final, detailed bills, supported by invoices of charges and showing all adjustments and credits, shall be submitted to the Advertiser as soon as available.

(c) <u>Adjustments.</u> The Agency's bills shall indicate the amount of media commissions involved and the adjustments necessary to bring them into conformity with this Agreement.

(d) <u>Due dates.</u> The Advertiser shall pay bills within 10 days after the date shown thereon. Any amount 30 days past due shall bear interest at the rate of 1.5 percent per month (18% annum). The Agency reserves the right, in the case of delinquent payments by the Advertiser or such impairment of the Advertiser's credit as in the Agency's opinion might endanger future payments to the Agency, to change the terms of payment under this Agreement. The Advertiser shall pay any and all costs of collection, including attorney's fees, incurred by the Agency in collecting any amounts due under this Agreement.

d) <u>Deferred payments</u>. The agency acknowledges that the advertiser is a new corporation and is supporting its advertising efforts through current cash flow. The current advertising expenditures are $1,000 weekly which both the advertiser and agency agree is not sufficient to currently pay the agency for its time. It is agreed therefore that the agency shall invoice the client on a monthly basis for its time which payment shall be deferred until such time as the advertiser triples its current weekly budget. At said time, the advertiser shall pay the agency $1,000 weekly until all

prior and current agency time invoices have been paid in full. In the event of a premature termination of this agreement, advertiser agrees to pay the agency in full for all prior and current agency invoices including time and out-of-pocket expenditures. In any case, the advertiser agrees to pay the agency in full, budget notwithstanding, on the six month anniversary of this agreement except in the case of a premature termination as set forth above.

(e) <u>Proof of expenditures.</u> The Advertiser shall be entitled to proof of payment by the Agency of all sums, other than those incurred under Page 4 (d) expended on the Advertiser's behalf.

(f) <u>Advances.</u> The Agency shall make all payments to third parties. However, the Agency reserves the right to discontinue making such payments is the Advertiser defaults in any payment to the Agency required by the terms of this Agreement.

7. <u>Responsibilities and Indemnification.</u>

(a) <u>Responsibility of Agency.</u> The Agency shall obtain releases, licenses, permits, or other authorization to use photography, copyrighted materials, artwork or any other property or rights belonging to third parties obtained by the Agency for use in performing services for the Advertiser.

(b) <u>Responsibility of Advertiser.</u> The Advertiser shall obtain releases, licenses, permits or other authorization to use any items obtained by the Advertiser which are used by the Agency in performing such services and the Advertiser shall be responsible for any claims with respect to such use. The

Advertiser shall be responsible for the accuracy, completeness and propriety of information which it furnishes to the Agency in connection with the performance of this Agreement.

(c) <u>Indemnification.</u> The Agency shall exercise its best judgement in the preparation and placing of all advertising and publicity for the Advertiser, with a view to avoid any claims, proceedings, or suits being made or instituted based upon any advertising or publicity which the Agency prepared and which the Advertiser approved before its publication or broadcast, and/or an advertising element which is furnished by the Advertiser to the Agency and which allegedly violates the personal or property rights of anyone.

The Advertiser hereby indemnifies the Agency against any loss or expense sustained as the result of any claim, suit or proceeding arising out of the Agency's obligations under applicable union codes or contracts relating to the airing of commercials based upon assertions made for the Advertiser's competitors in any advertising which the Agency may prepare for the Advertiser and which the Advertiser approves before its publication or broadcasting.

The Advertiser will not indemnify the Agency for any claim, suit, or proceeding made or brought against the Agency as a result of acts of gross negligence and/or willful misconduct by the Agency.

Each party hereby indemnifies the other party for any loss or expense sustained as the result of any claim, suit or

9

proceeding made or brought against the other party arising out of or in connection with the indemnifying party's obtaining, or failing to obtain, releases, licenses, permits or other authorization regarding personal or property rights belonging to third parties.

    (d) <u>Misleading Advertising.</u> Nothing herein contained shall be deemed to require that the Agency undertake any campaign, prepare any advertising material or publicity, or cause publication of any advertisement or article, which, in the Agency's judgement, would be misleading, indecent, libelous, unlawful, or otherwise prejudicial to all the interests of either party.

    8. <u>Insurance.</u> The Agency shall, at its own expense, during the term of this agreement, continuously maintain in force an Advertiser's liability policy for the benefit of the Advertiser in a minimum amount of $1,000,000. If insurance is not available in that amount, the Agency shall not commence performance of this Agreement until such insurance coverage or a mutually satisfactory insurance arrangement is in full force and effect.

<u>Duration and termination.</u>

    (a) <u>Term.</u> This Agreement shall be effective as of February 15, 1993, and shall continue in force for a period of 12 months unless sooner terminated as provided herein.

    (b) <u>Termination - work in progress.</u> Either party may terminate this Agreement by giving the other party written notice at least 90 days prior to the effective date of termination. Upon

10

receipt of notice of termination, the Agency shall not commence work on any new advertisements previously approved by the Advertiser. All other rights and duties of the party shall continue during such notice period and the Advertiser shall be responsible to the Agency for the payment of any contract obligation incurred with third parties during this period, and for uncancellable contracts made pursuant to the Advertiser's authorization and still existing at the expiration of the notice period. If either the Advertiser or Agency desires to terminate all work in progress on advertisements commenced before receipt of notice of termination, it may do so only upon the parties' mutual consent and the determination and payment of the compensation to be received by the Agency for partially completed work.

(c) Assignment upon termination. Upon termination of this Agreement, the Agency shall assign to the Advertiser all of its rights in contracts, agreements, arrangements, or other transactions made with third parties for the Advertiser's account, effective on the date of termination or on such other date as may be agreed upon by the parties. The Advertiser shall assume all obligations and indemnify and hold the Agency harmless from all liability thereunder. If any contract is nonassignable and consent to assignment is refused, the Agency shall continue performance of such unassigned and unreleased contract only, and the Advertiser shall continue to fulfill its obligations hereunder to the Agency as though this Agreement had not been

11

terminated with respect to such unassigned or unreleased contract.

(d) <u>Termination billings.</u> Upon termination of this Agreement, the Agency shall bill the Advertiser for all amounts not previously billed and due the Agency at that time. The Agency shall not be entitled to a commission on or payment for any advertisement worked commenced after the date it received notice of termination. The Agency shall, however, be entitled to payment for services and commissions for advertisement commenced and approved for placement in a specific media by the Advertiser prior to receipt of the notice or, with the written consent of the Advertiser, prior to the effective date of termination.

10. <u>Payment of property and materials.</u>

(a) <u>Payment and ownership.</u> Any materials, services, etc., which the Agency has committed to purchase for the Advertiser's account, or with the Advertiser's approval, shall be paid for by the Advertiser in accordance with the provisions of this Agreement. Upon termination of this Agreement, the Agency shall transfer, assign and make available to the Advertiser all property and materials in the Agency's possession or control belonging to and paid for by the Advertiser, and for all information regarding the Advertiser's advertising. The Agency shall give all reasonable cooperation toward transferring, with approval of third parties in interest, all reservations, contracts and arrangements with media, or others, for advertising space, broadcast time, or materials yet to be used and all rights

12