# EXHIBIT 2

## PART 15

and claims thereto and therein, upon being duly released from the obligation thereof. However, at termination, any used advertising plans and ideas prepared by the Agency, or any advertisements not already published or broadcast, shall remain the Agency's property, regardless of whether or not the physical embodiment of the creative work is in the Advertiser's possession in the form of copy, artwork, plates, recordings, film, videotape, etc. unless it was either mutually agreed in writing that any such plan or idea became the Advertiser's property, or specific payment for it was agreed upon and made by the Advertiser. The Advertiser agrees to return to the Agency any copy, artwork, plates, or other physical embodiment of the creative work relating to any such idea or plan, which may be in the Advertiser's possession.

(b) <u>Obsolete material</u>. If the Agency should determine that artwork, electrotypes, engravings, photographs, manuscripts, and other similar items are of no further use in carrying out this Agreement, it shall notify the Advertiser in writing and clearly describe the particular item or items. The Advertiser shall then notify the Agency in writing of the disposition the Advertiser desires with respect to such items. The Advertiser shall pay all shipping and transportation costs, and the Agency shall not be obligated to store the material at is expense except for a period not exceeding 30 days after notice has been given. These provisions shall apply whether the items in questions are in the possession of the Agency or third parties. If the Advertiser

13

should fail to respond to the Agency's notice within 30 days, the Agency shall have the option of storing such items in public storage facilities in the Advertiser's name and at the Advertiser's expense and risk. In that event, the Agency shall notify the Advertiser in writing of such storage and give the Advertiser the necessary particulars.

11. <u>Assignment and delegation.</u> Neither party may assign any rights or delegate any duties hereunder without the other's express prior written consent.

12. <u>Modification.</u> This writing contains the entire agreement of the parties. No representations were made or relied upon by either party, other than those that are expressly set forth. No agent, employee, or other representative of either party is empowered to alter any term of this Agreement, unless done in writing and signed by an executive officer of the respective parties.

13. <u>Controlled law.</u> The validity, interpretation and performance of this Agreement shall be controlling by and construed under the laws of Maryland.

14. <u>Waiver.</u> The failure of either party to this Agreement to object to or to take affirmative action with respect to any conduct of the other which is in violation of the term of this Agreement shall not be construed as a waiver of the violation or breach, or of any future violation, breach or wrongful conduct.

15. <u>Notices.</u> All notices pertaining to this Agreement shall be in writing and transmitted either by personal hand delivery,

or through the United States Post Office certified first class mail return receipt requested. All notices shall be sent to the addresses set forth below for the respective parties, unless either gives written notice of a change of address.

16. <u>Headings.</u> Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

17. <u>Counterparts.</u> This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall construe one and the same instrument.

18. <u>Binding effect.</u> The provisions of this Agreement shall be binding upon and insure the benefit of each of the parties and their respective successors and assigns.

19. <u>Confidentiality.</u> For purposes of this Agreement, the following definitions shall apply:

(a) "Trade Secret": Any scienfitifc or technical information, design, process, procedure, formula, or improvement relating to the advertisers products that is valuable and not generally knwon to competitors of the client's competitors, including (without limitation) the specialized information and technology the client has developed or acquired or may develop or acquire with respect to the creation, design, development, manufacture, capabilities, and performance of the advertisers products.

(b) "Confidential Informations": Any data or informations, other than Trade Secrets, relating to