**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL CREDIT COUNSELING SERVICES, INC. | * |
| Plaintiff | * |
| v. | *   Civil Action No: 1:06 CV 02028 RBW |
| UNITED STATES OF AMERICA | * |
| Defendant | * |

*     *     *     *     *     *     *     *     *     *     *

**PLAINTIFF'S MEMORANDUM IN REPLY TO UNITED STATES' MEMORANDUM
OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Plaintiff, National Credit Counseling Services, Inc. (alternatively, "NCCS" or "Plaintiff"), by its undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules LCvR 7(d) and LCvR 7(h), hereby submits this Memorandum in Reply to United States' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment (the "Reply Memorandum"), and states as follows:

**PROCEDURAL HISTORY**

The United States Internal Revenue Service ("IRS") conducted an examination of Plaintiff's Forms 990, Return of Organization Exempt from Income Tax, for the tax years 2000 through 2002.  As a result of this examination, the IRS proposed that Plaintiff's tax-exempt status be revoked, and that such revocation be applied retroactively to January 1, 2000.  The IRS communicated its proposed revocation of Plaintiff's tax-exempt status in a letter dated January 15, 2005 (the "30 Day Letter").

In response to the 30 Day Letter, on March 14, 2005, Plaintiff submitted a protest to the IRS's proposed revocation, which protest contained an extensive analysis of the facts and applicable law and an explanation as to why the IRS's retroactive revocation was improper (the "Protest").

In response to the Protest, on September 5, 2006, the IRS Appeals Division sustained the proposed revocation of Plaintiff's tax-exempt status applied retroactively to January 1, 2000 (the "Final Determination Letter").

Thereafter, Plaintiff initiated the instant action for Declaratory Judgment under Section 7428 of the Internal Revenue Code of 1986, as amended (the "Code") and, on February 1, 2008, Plaintiff filed a Motion for Partial Summary Judgment (including a Memorandum in Support of Motion for Partial Summary Judgment) seeking a judgment that the retroactive application of the IRS's revocation of Plaintiff's tax-exempt status is an improper abuse of the IRS's discretion (collectively, the "Summary Judgment Motion").

On February 15, 2008, the United States of America (alternatively, "USA" or "Defendant") filed the United States' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment (the "Opposition Memorandum") in which the Defendant proffers three arguments in opposition to the Summary Judgment Motion. This Reply Memorandum presents, *seriatim,* Plaintiff's response to the three arguments presented in the Opposition Memorandum and highlights some of the glaring weaknesses in United States' Statement of Genuine Issues Setting Forth Material Facts as to Which There Exists a Genuine Issue.

## <u>DEFENDANT'S FIRST ARGUMENT</u>

Defendant's first argument is a procedural argument, namely, that Plaintiff did not exhaust its available administrative remedies regarding a challenge to the retroactive application of the IRS's revocation of its tax-exempt status and, accordingly, this Court is lacking jurisdiction regarding such challenge under 7428(b)(2) of the Code. Opp. Mem. at ¶8. Specifically, Defendant argues that, because Plaintiff did not (i) include in the Protest a precise statement to the IRS providing notification that Plaintiff was seeking to limit the retroactive revocation of its tax-exempt status under section 7805(b) of the Code, and (ii) strictly follow the process set forth under Section 14.02 of IRS Revenue Procedure 2005-4, it did not exhaust the administrative remedies available to it regarding the limitation of a retroactive application of the IRS's revocation of Plaintiff's tax-exempt status and, therefore, this Court is lacking the subject matter jurisdiction regarding same. *Id.*  Plaintiff submits that it adhered to the standards required of it in the administrative process to raise the challenge to retroactive application of the revocation in the instant case.

Further, it is clear from relevant authority that strict adherence with the procedures and processes to which Defendant refers is not required.  For example, in discussing the statutory and regulatory requirements regarding a taxpayer's claim for a tax refund (a claim that is similar to the instant issue regarding a limitation of the retroactive application of a ruling), the United States Court of Appeals for the Seventh Circuit stated that "there is substantial authority that these regulations do not require the strictness of common-law pleading or criminal indictment, but only require that the statement of facts be reasonably sufficient to make the Commissioner aware of the nature of the claims; the specific legal formulations of these claims need not be

made." *American Nat'l Bank & Trust Co. v. U.S.*, 594 F.2d 1141, 1144 n. 1 (7th Cir. 1975)

(citing *Scovill Manufacturing Co. v. Fitzpatrick*, 215 F.2d 567 (2d Cir. 1954)).[1]

Although courts have recognized the need to comply "with the requirements of both the jurisdictional statute and the accompanying treasury regulations[,]" where the taxpayer does not raise a wholly new factual basis for an administrative claim and "has set forth the facts about an underlying claim with sufficient precision to allow the agency to make an intelligent determination of its merits, he should be permitted to present the claim in federal court and should not be precluded by 'trivial mislabeling' of his claims." *Krasnow v. U.S.*, 508 F. Supp. 1099, 1103 (S.D.N.Y. 1981) (court precluded raising of claim because taxpayer raised a basis for recovery that was entirely different from what was originally presented).

With respect to the requirements under the Code and Treasury Regulations concerning claims for tax refunds/credits (which regards issues similar to the Revenue Procedure at issue in the instant matter), such requirements "go no further than to require the taxpayer to set forth facts sufficient the Commissioner of Internal Revenue to make an intelligent administrative review of the claim." *Scovill, supra* at 569. Unlike the facts in *State Bank of Albany v. U.S.*, 71-CV-205, 1974 WL 719 *2 (N.D.N.Y), where that court found subject matter jurisdiction lacking, Defendant has not shown that Plaintiff's grounds for the disputed administrative claim were not reasonably encompassed within the Protest Letter as worded ***and*** that such grounds would not

---

[1]  *See also Silberman v. U.S.*, 40 Fed. Cl. 895 (1998); *Decker v. U.S.*, No. 5:91-172, 1993 WL 402814 (D.Conn. June 9, 1993); *Crocker v. U.S.*, 563 F.Supp. 496, 498 (S.D.N.Y. 1983) (in a tax refund matter, denied the government's lack of jurisdiction argument where taxpayer's claim for refund "reasonably and substantially" complied with the statute at issue [quoting *Scovill, supra*]); *Gada v. U.S.*, 460 F.Supp. 859 869 n. 5 (D.Conn. 1978) (considering whether the taxpayer could raise certain arguments not expressly made in its refund claim, explaining all that is required is that the taxpayer set forth facts sufficient to enable the IRS to make an intelligent review of taxpayer's claim, and that a minor variation between original claim and civil complaint is not necessarily fatal to recovery); and *Lemoge v. U.S.*, 378 F.Supp. 228, 232 (N.D.Ca. 1974) (deciding that "the court can reach a decision on the merits if the refund claim presented "facts sufficient to enable the Commissioner to make an intelligent administrative review of the claim." [citing *Scovill, supra*]).

necessarily have been investigated in the course of the consideration of such claim as part of an intelligent administrative review. *Id*. (emphasis added).  Contrary to Defendant's assertion in the Opposition Memorandum, Plaintiff's challenge of the IRS's retroactive application of its proposed revocation of Plaintiff's tax-exempt status is not being asserted "for the first time before the Court . . . ." *Id*.

As set forth in NCCS's Protest Letter (the "Protest Letter"), a true and accurate copy of which is attached to the Declaration of Lawrence P. Blaskopf (Declaration is Docket No. 27-3; Protest Letter is Docket No. 27-4):

> Further, even assuming arguendo that the IRS has developed new standards with regard to determining the tax-exempt status of credit counseling organizations and desires to apply such standards to NCCS, the IRS is prohibited from revoking NCCS's tax-exempt status as proposed in the 30 Day Letter.  It must be recognized that the treasury regulations under Section 501(c)(3) of the Code provide that once the IRS has issued a determination letter recognizing the tax-exempt status of an organization, the organization "may rely upon such determination so long as there are no substantial changes in the organization's character, purposes, or methods of operation."  Reg. § 1.501(a)-1(a)(2); see also Treas. Reg. § 601.201.  This is also clear in the case law.  For example, in Lesavoy Found. v. Comm'r, 238 F.2d 589 (3d Cir. 1957), *rev'g* 25 T.C. 924 (1956), the court held that the IRS could not arbitrarily revoke the organization's exemption based on a previously issued ruling.  The IRS also has explained these regulations as assuring an organization that it can rely on a "determination letter unless there is a material change in its operations or a change in the applicable law."  See General Counsel Memorandum 39866, fn. 3 (1991).

> Further, it should be noted that the second sentence of treasury regulation Section 601.201 provides that **a revocation of exempt status may be retroactive only under the following circumstances**: (a) if the subject organization omitted or misstated a material fact, (b) operated in a manner materially different from that originally represented, or (c) engaged in a prohibited transaction for the purpose of diverting corpus or income from its exempt purpose, and if the transaction involved a substantial part of the corpus or income of the organization. Treas. Reg. § 601.201. Id. **Recognizing these limitations, Rev. Proc. 90-27, 1990-1 CB 514 explains that revocation or modification of exempt status should only be "retroactive if the organization omitted or misstated a material fact [or] operated in a manner materially different from that originally**

represented…" The 30 Day Letter does not describe any such circumstances with regard to NCCS.

The IRS's suggestion to retroactively revoke NCCS's exempt status demonstrates a failure by the IRS to recognize that NCCS has been operated in substantially the same manner as was described in its Form 1023, pursuant to which Form 990s were prepared and filed since that date. The facts described in the 30 Day Letter, and the facts described in this appeal/protest and other information provided to the IRS during the audit demonstrate that NCCS has operated in a manner that is substantially consistent with the information provided in the Form 1023.

It is clear that an attempted revocation of NCCS's tax-exempt status is not permissible under applicable law within which the IRS must comply. Such an action would be an arbitrary, unreasonable, and invalid administrative action.

Protest Letter at 15-16. (emphasis added).

As the above excerpt from the Protest Letter clearly shows, Plaintiff's challenge to the IRS's retroactive application of its proposed revocation of Plaintiff's tax-exempt status not only "was reasonably encompassed within the rejected administrative claim as worded" but squarely raised in the Protest Letter, and the IRS would "necessarily have investigated" Plaintiff's contention "in the course of [its] consideration of the [P]laintiff's claim in making an intelligent administrative review." *Albany, supra,* at \*2. Accordingly, Defendant's assertion that this Court lacks subject matter jurisdiction regarding the IRS's retroactive application of its proposed revocation of Plaintiff's tax-exempt status must fail.

Additionally, *Morrison v. U.S.*, 449 F. Supp 654 (N.D. Ohio 1977) addressed the types of statues, regulations and revenue procedures which are at issue in the instant case (*i.e.*, Treasury Regulation Section 301.6402-2(b)(1)) and stated that of paramount importance is that the IRS be provided the "opportunity to consider and dispose of the claim without the expense and time which would be consumed if every claim had to be litigated." *Id.* at 658. *Morrison* involved a

federal tax refund claim where the taxpayer did not specifically state grounds in his original claim that the subject transaction involved the sale of "contract rights" in real property instead of the real property itself.   The *Morrison* court held, however, that because the IRS knew the taxpayer was challenging the income tax assessed on the proceeds of the subject transaction, and that the IRS knew the taxpayer was challenging the income tax on the ground that it was a capital gain, the taxpayer presented facts sufficient to enable the Commissioner to make an intelligent administrative review of the claim.   *Id.* at 659   In the instant matter, Plaintiff's Protest Letter provided more than adequate opportunity for the IRS to consider its retroactive application of the proposed revocation of Plaintiff's tax-exempt status.   The *Morrison* court also elaborated that such rules and procedures set forth in regulations and procedures such as the one at issue in the instant case are to ensure that  "no factual surprise will arise at the time of trial" and that any such claim made thereunder "must be sufficient to advise the [IRS] of the items on which [the IRS] depends for support of [its] position."   *Id.* at 658.   Again, in the case at hand, Plaintiff's Protest Letter eliminated any surprise the Defendant reasonably could raise, and provided more than enough detail to advise the IRS regarding its ability to support a retroactive application of the revocation of Plaintiff's tax-exempt status. *Id.*

In sum, Plaintiff's Protest Letter "presented 'facts sufficient to enable the Commissioner of Internal Revenue to make an intelligent administrative review of the claim [regarding retroactive application of the IRS's revocation of Plaintiff's tax-exempt status]." *Id.*   Plaintiff's arguments in the Summary Judgment Motion relating to the retroactive application of the IRS's revocation of Plaintiff's tax-exempt status are not "premised upon a far different theory" than that which was made by Plaintiff in the Protest, *Fidelity-Philadelphia Trust Co. v. U.S.*, 222 F.2d

379, 382 (3d Cir. 1954),[2] nor did Plaintiff's make arguments in the Summary Judgment Motion that were "advanced on entirely different grounds" than those advanced in the Protest, *Real Estate-Land Title & Trust Co. v. U.S.*, 309 U.S. 13, 18, 60 S.Ct. 371, 373 (1940), nor were Plaintiff's arguments made in each of the Protest and the Summary Judgment Motion "on substantially different grounds." *Morrison, supra,* 449 F. Supp. at 659.  Again, in light of the foregoing, the position espoused by Defendant regarding this issue is erroneous because Plaintiff "reasonably and substantially complied with [the applicable] statute and regulations, and is entitled to a decision on the merits." *Scovill, supra* at 570.

In the Opposition Memorandum, Defendant raises the issue that Plaintiff failed to include in the Protest Letter a specific reference to section 7805(b) of the Code as explicitly required under Section 14.02 of IRS Revenue Procedure 2005-4.  The argument is specious.  Of paramount importance to any such requirement is to put the IRS on notice regarding the authority upon which the claimant relies.  As demonstrated in the preceding paragraphs, NCCS provided the IRS ample notice of the authority on which it relies.  *See Scott Paper Co. v. U.S.*, 943 F.Supp. 489 (E.D.Pa. 1996).

In *Scott Paper,* the court confronted a situation in which, as in the instant case, the United States claimed that the defendant taxpayer did not properly raise the applicability of a specific Code section, namely, 7805(b) of the Code, in his claim.  *Id.* at 492.  In holding that it was not fatal to the taxpayer defendant's administrative claim to fail to specifically refer to section 7805(b) of the Code, the *Scott Paper* court reasoned that defendant's mere reference to the

---

[2]  In *Fidelity*, the court did not allow the taxpayer (as part of a claim for a tax refund) to make a claim in litigation based upon an entirely different theory than what the taxpayer made in its original refund claim, *i.e.*, where the taxpayer attempted to raise a claim in litigation that, based upon an agreement between itself and the executor, it should be allowed a charitable deduction to the extent the court disallows the executor's commission.)

regulation ("RR 88-98"), which the IRS was applying retroactively (a corollary to the revocation

of Plaintiff's tax-exempt status), sufficiently put the IRS on notice that section 7805(b) of the

Code was at issue. *Id.* at 495. The court explained why the defendant's reference to RR 88-98

provided sufficient notice:

> Section 7805(b) provides that the IRS may prescribe the extent, if any, to
> which any ruling or regulation relating to internal revenue laws shall be
> applied without retroactive effect. Stated differently, unless otherwise
> specifically limited, all internal revenue laws have retroactive effect. In
> essence, by not limiting their retroactive effect, the IRS makes a decision
> that laws shall be applied retroactively. [The IRS] clearly replied upon
> section 7805(b) when it did not limit the retroactive application RR 88-98.

*Id.*

Accordingly, by raising the issue of retroactive revocation in the Protest Letter, Plaintiff

sufficiently put the IRS on notice that it was section 7805(b) of the Code to which Plaintiff was

referring.

Defendant also makes reference to the "variance doctrine" as standing for the arguments

it makes under the heading "Argument I" in the Opposition Memorandum. The "variance

doctrine" stands for the notion that "a taxpayer may not raise different grounds than those

brought to the IRS." *Carrione v. U.S.*, 297 F.Supp. 141, 146 (E.D.N.Y. 2003) (in a claim for

federal income tax refund, taxpayer was not allowed in litigation to argue that he was entitled to

refund on income taxes paid on the proceeds from the sale of his business because all such

proceeds were subject to forfeiture to the United States when he originally claimed that no

income tax on proceeds from sale of business were due because the sale was reported in the

wrong tax year; the two arguments were sufficiently distinct and the forfeiture argument was

precluded under the variance doctrine). Stated differently, "the 'variance doctrine' bars a

taxpayer from raising issues in a suit against the United States that were not first raised in [its

original] claim . . . ." *Id.*  At bar, NCCS specifically challenged the retroactivity of the revocation of Plaintiff's tax exempt status.  *See Protest Letter.*  Consequently, the "variance doctrine" does not apply in the instant matter.

Also, it is noteworthy that Defendant correctly points out that Defendant admitted in its Answer to this proceeding that Plaintiff exhausted its administrative remedies; however, Defendant then asserts that that it would be "disingenuous" for Plaintiff to use Defendant's admission as an argument in this matter.  Plaintiff believes that it is Defendant who is being disingenuous in this regard, for Defendant is the party raising procedural perfection as an argument to prevent Plaintiff from obtaining relief to which it is entitled.  Therefore, Plaintiff hereby asserts that, among other things, in reliance upon Defendant's affirmative answer regarding Plaintiff's exhaustion of administrative remedies, Plaintiff continued this litigation and proceeded to file the Summary Judgment Motion and this Reply Memorandum.  Defendant's argument that Plaintiff did not exhaust its administrative remedies regarding the retroactive application of the IRS's revocation of Plaintiff's tax-exempt status is erroneous and inconsistent with Defendant's Answer in this case. Accordingly, Defendant should be precluded from asserting same.  *National Ass'n of Life Underwriters, Inc. v. Commissioner of Internal Revenue*, 30 F.3d 1526, 1530-31 (D.C. Cir. 1994).  In *Life Underwriters*, the D.C. Circuit reversed a tax court ruling that was based on an analysis offered by the Commissioner at odds with the Commissioner's pleadings.  *Id.* at 1530.  The court explained that "admissions in the pleadings are binding."  *Id.*  Indeed, admissions and stipulations are binding on the parties and the trial court as well as on appeal.  *Id.*  (While USA may argue that under certain circumstances an amendment to the answer may be allowed, Defendant neither has sought nor justified such an amendment, relying instead on a mere disavowal of its admission.  *See also Curb v. MCA*

*Records, Inc.*, 898 F.Supp. 586, 590-92 (M.D. Tenn. 1995) (granting summary judgment against plaintiff based on plaintiff's admissions in the complaint, its amended complaint and in an oral appearance before the court).[3]

Defendant makes its final attempt to use procedural perfection as a way of denying Plaintiff from obtaining that to which it is entitled by asserting that Plaintiff's Summary Judgment Motion was improper because in it Plaintiff "asserted a hypothetical claim [Plaintiff] had not raised in its complaint." Opp. Mem. At 6. The United States argument is, at best, misguided.

First, Plaintiff's claim that retroactive revocation is improper is anything but hypothetical. This Reply Memorandum and Plaintiff's Summary Judgment Motion provided ample authority for a very real, palpable claim. The 90 Day Letter rejected the Protest Letter and provide for the retroactive revocation of NCCS's tax exempt status. The instant litigation takes issue with the 90 Day Letter in alleging, plainly, "The 90 Day Letter was issued in error." Complaint [Docket No. 1] at ¶ 40. USA denied the allegation, thereby putting in issue the matter of retroactivity of the revocation. Furthermore, the *as damnum* of the Complaint seeks a declaration "that the 90 Day Letter was issued in error." Complaint at p. 9 (*ad damnum* clause). Consequently, the prayer for relief extends to the entirety of the 90 Day Letter, which embodies the entirety of the IRS's action, including the retroactivity of the revocation. Also, the Plaintiff seeks an order "[a]warding the Plaintiff such other and further relief as this Court deems just and proper[,]" thereby seeking the relief from retroactive application of the revocation.

---

[3] Plaintiff notes that USA admitted NCCS exhausted its administrative remedies, not only in the Answer, but in its Amended Answer filed on May 7, 2007 [Docket No. 14].

To the extent that USA suggests that Plaintiff's claim is "hypothetical" because the Court will not address the timing of the revocation, if the Court finds the revocation itself improper, strains credulity. The revocation and the timing (retroactive) of the revocation are two elements of the same wrong. No court would say it could not grant partial summary judgment in a negligence case as to causation merely because it would be premature to look at the issue before the Plaintiff establishes that a duty exists or that it could not grant summary judgment for defendant in a contract case if no damages could be proven, just because the breach of the contract had not been established yet.

Finally, to the extent that United States feigns ignorance of the claim being raised in the Complaint, suggests the issue was not pled or that failure to make reference to a specific statute renders adjudication of the issue beyond the scope of proper consideration, it ignores the fundamental principles of pleading. Specifically, the purpose of pleading is simply to give the Defendant fair notice of the Plaintiff's claims and the ability to file a responsive answer and prepare a defense. *Hastings v. Dept. of Justice*, 223 F.Supp. 2d 196, 198 (D.D.C. 2000) (denying motion to dismiss).

Impliedly, the Defendant argues that the Complaint does not meet the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, a position which is contrary to well established principles that date back to the adoption of the Federal Rules of Civil Procedure in 1938. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief…." The controlling principles are well explained in *Bartholet v. Reshauer A.G*, 953 F.2d 1073 (7th Cir. 1992) (reversing the district court's dismissal of complaint). In *Bartholet*, the plaintiff had asserted a claim for breach of contract under state law in state court.

*See id.* at 1076; *Howard v. Gutierrez,* 474 F.Supp. 41, 49-50 (D.D.C. 2007) (denying motion to dismiss and mentioning failure to exhaust administrative remedies is an affirmative defense).

In *Bartholet,* the defendant removed the case to federal court and moved to dismiss under Rule 12(b)(6) on the grounds that the plaintiff had no state law claim because his claim was related to pension benefits that had been pre-empted by the Employee Retirement Income and Security Act of 1974 ("ERISA"). *Bartholet,* 953 F.2d at 1073. The district court had granted the Rule 12(b)(6) motion. *See id.* The Court of Appeals for the Seventh Circuit reversed, stating that the incorrect assumption implicit in the district court's decision was "that a complaint must plead law as well as fact." *Id.* at 1077. The *Bartholet* Court explained, in language that is relevant in the instant case, as follows:

> Rule 8(a) of the Federal Rules of Civil Procedure says that a complaint must identify the basis of jurisdiction and contain 'a short and plain statement of the claim showing that the pleader is entitled to relief'. Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it. Complaints should be short and simple, giving the adversary notice while leaving the rest to further documents. 'The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate.' Fed.R.Civ.P. 84. None of the forms in the appendix spells out a legal theory.

*Id.* at 1077-78. The court also stated, "[I]nstead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." *Id.* at 1078 (citation omitted). The court emphasized that the "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Id.*

The same court, in a subsequent case, stated that the

Rules of Civil Procedure divorce factual from legal aspects of the claim and replaced 'cause of action' with 'claim for relief' to signify the difference. (citation omitted). A complaint should limn the grievance and demand relief. It need not identify the law upon which the claim rests, and different legal theories therefore do not multiply the number of claims for relief. One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate.

*NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992), *cert. den.,* 508 U.S. 907, 113 S.Ct. 2335 (1993).

In *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967 (7th Cir. 1999), the court held that the failure of the plaintiff to cite the advertising regulations on which its claim was based was not a basis to dismiss under Rule 12 (b)(6). "It is of no moment, consequently, [under Rule 8(a)] that the complaint did not identify either of the two regulations on which Sanfield stakes its case." *Id.* at 973. The court, citing *Bartholet*, made clear that a "complaint need not cite [a] statute on which [a] claim is based." *Id.*[4] *See also Ghebreselassie v. Coleman Sec. Serv.*, 829 F.2d 892, 895 (9th Cir.1987), *cert. den. sub nom., California Teamsters v. Ghebreselassie*, 487 U.S. 1234, 108 S. Ct. 2900 (1988)("a properly pleaded claim in federal court need not specify under which law it arises."); *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 44 (2d Cir. 1997)(the court reversed the district court's dismissal of the complaint under Rule 12(b)(6) where the district court had dismissed under Rule 12(b)(6) on the basis that the sections of the Fair Credit Reporting that the plaintiff had cited in the complaint were not applicable and that the complaint did not assert a claim against the defendant.); *Albiero v. City of Kankakee*, 122 F.3d

---

[4] Plaintiff understands that USA is not seeking to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure; however, the rationalization that USA provides in its Opp. Memo parallel such an argument that the analysis of Rule 8 seems *apropos*.

417 (7th Cir. 1997) ("matching facts to a legal theory was an aspect of Code pleading interred in 1938 with the adoption of the Federal Rules of Civil Procedure"); *Compaq Computer Corp. v. Inacom Corp.*, No C.A. 01-108, 2001 WL 789408, at *4 (D. Del. July 12, 2001) (court denied a motion to dismiss under Rule 12(b)(6) stating that "[a]t the outset, the court emphasizes that under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff need only include a 'short and plain statement of the claim showing that the pleader is entitled to relief.' F.R.C.P. 8(a)(2). Rule 8(a)(2) does not require a claimant to set forth any specific legal theory justifying the relief sought in the complaint. . . . thus, the federal rules do not require the plaintiffs to 'plead law or match facts to every element of a legal theory.'" *Id*. at *4 (quoting *Bennett v. Schmidt*, 153 F.2d 516, 518 (7th Cir. 1998)).

## DEFENDANT'S SECOND ARGUMENT

Presented as Defendant's Argument II in the Opposition Memorandum, Defendant asserts that the issue raised in the Summary Judgment Motion regarding the retroactive application of the IRS's revocation of Plaintiff's tax-exempt status is premature because this Court must ***first*** determine whether the IRS's revocation of Plaintiff's tax-exempt status was proper. (Opp. Mem. at ¶20.) Defendant relies upon its own analysis as to what may form the basis for a proper revocation of tax-exempt status in the instant case and what may form the basis for a proper retroactive application of any such revocation, *i.e.*, that the latter is dependent upon the former. (Opp. Mem. ¶21.) Defendant's reasoning is illogical, in that such direct dependence between the two issues is not necessarily present in all cases, and is certainly not present in the instant case.

While Plaintiff admits that Defendant's reference to Treasury Regulation section 601.201(n)(6)(i) and the statement that a revocation of Plaintiff's tax-exempt status would be applied on a prospective basis "only if NCCS had not misstated a material fact in its exempt

application or if its operations had not materially changed from what it represented on such application" (*Id.*), Plaintiff does not agree that it is necessary, as asserted by Defendant, to first determine "that NCCS is not a tax-exempt organization and determine what changes in NCCS's operations cause it to lose its . . . tax-exempt status." *Id.*   First, Plaintiff notes that the relevant language contained in Treasury Regulation section 601.201(n)(6)(i) is "operated in a manner materially different from originally represented" and the language "originally represented" has been interpreted by competent authority as including information reported to the IRS on Form 990 filed by such organization. *See Lesavoy Found. v. Comm'r*, 238 F.2d 589 (3d Cir. 1957), *rev'g* 25 T.C. 924 (1956) (and cases cited therein).   Therefore, it is entirely possible for an organization to change its operations from that which originally was described to the IRS in its initial application for exemption and not be subject to a retroactive revocation so long as such organization properly had reported such changes on its Form 990 filed with the IRS.

Indeed, this is the very argument Plaintiff is presenting in the Summary Judgment Motion: assuming *arguendo*, that Plaintiff's maintained a relationship that the IRS determined was improper and, therefore, supported a revocation of Plaintiff's tax-exempt status, may the application of such revocation be properly applied retroactively given that Plaintiff reported such relationship to the IRS in its Forms 990?  It is clear that this Court is entirely able to rule on the issue Plaintiff frames in the Summary Judgment Motion.   In addition, Plaintiff respectfully references the arguments made in the Protest and Summary Judgment Motion in support of its contention that a retroactive revocation in such circumstances is an improper abuse of discretion.

Each case cited by Defendant in support of its argument merely stands for the proposition that, sequentially, one must first have a revocation before determining whether such revocation is applied retroactively.   While Plaintiff agrees with the basic premise of each case cited by the

Defendant, it maintains that such cases are inapposite to the instant matter because the propriety

of a revocation of tax-exempt status was a primary issue in each, and such is not the case in the

Summary Judgment Motion. Rather, Plaintiff's Summary Judgment Motion asks the Court to

rule whether a revocation of Plaintiff's tax-exempt status under the reasoning set forth by the IRS

in the Final Determination Letter, *if proper*, could be applied retroactively under the undisputed

facts in this case as the same are applied to applicable law. No case cited by Defendant in the

Opposition Memorandum is on point in this regard.

## DEFENDANT'S THIRD ARGUMENT

Presented as Defendant's Argument III in the Opposition Memorandum, Defendant

asserts that it is entitled to further discovery to address the merits of the Summary Judgment

Motion. Defendant's argument regarding further discovery confounds logic in that the issue

raised in the Summary Judgment Motion regarding the retroactive application of the IRS's

revocation of Plaintiff's tax-exempt status must have been fully considered and analyzed by the

IRS when it made its original determination to revoke Plaintiff's tax-exempt status. Given that

Defendant has more access to the facts and analytical process regarding the IRS's decision to

revoke retroactively Plaintiff's tax-exempt status, its claimed need for further discovery only

bolsters Plaintiff's assertion that the IRS acted in an arbitrary, unreasonable, and invalid manner

in deciding to revoke (retroactively or otherwise) Plaintiff's tax-exempt status, thereby

constituting an abuse of discretion.

Defendant rests its argument for further discovery on Plaintiff's relationship with Amerix

Corporation ("Amerix"), citing an investigation conducted by the United States Senate regarding

abusive practices in the credit counseling industry (the "Report"). Opp. Mem. ¶25.[5]  Plaintiff

finds it peculiar that Defendant would refer to the Senate's investigation of the credit counseling

industry in support of its argument for further discovery because the Report attached to the

Opposition Memorandum was available on April 13, 2005, some seventeen months *prior* to the

issuance of the Final Determination Letter.  Obviously, the IRS had almost seventeen months to

obtain and analyze the information contained in the Report and consider such information during

the IRS administrative appeal process before making its decision to issue the Final Determination

Letter.  Indeed, Defendant's position in this regard further supports Plaintiff's argument that the

retroactive application of the IRS's revocation of Plaintiff's tax-exempt status was an arbitrary,

unreasonable, and invalid administrative action constituting an abuse of discretion.

Defendant repeatedly refers to Plaintiff's relationship with Amerix as a change in

Plaintiffs operations which necessarily, without more, results in an automatic revocation of

Plaintiff's tax-exempt status. (Opp. Mem. ¶¶25, 26; Opp. Mem. fn. 2.)  Presumably, Defendant is

asserting that Amerix's status as a *for-profit* entity is the "fatal blow" to Plaintiff's tax-exempt

status.  Notwithstanding that Defendant's discussion of Plaintiff's relationship with Amerix is

wholly irrelevant to its arguments for further discovery, Defendant ignores the fact that tax-

exempt entities routinely "contract out" for services and operations to for-profit entities – one

only need to recognize that many tax-exempt hospitals contract-out certain specialty services

(*e.g.*, cardiac care and emergency services) to for-profit physician groups without any adverse

---

[5]    Now that the Senate's investigation of the credit counseling industry has been made a part of the record in this proceeding, Plaintiff submits that such investigation and report is enlightening in that it underscores the political climate within which the IRS conducted its examination of Plaintiff and rendered its final decision regarding Plaintiff's tax-exempt status, and indicates that in so doing, the IRS used a "result-oriented" approach which ignored key facts and settled law.  Of course, the entire document is itself a collection of hearsay and should not be admissible for purposes of opposing summary judgment.

impact on their tax-exempt status. Indeed, consumer budgeting and credit counseling, including establishing a debt management plan, is very labor intensive, and Plaintiff determined that it would be more efficient for it to contract out certain operations to Amerix. *See* Affidavit of Etta Money in Support of Plaintiff's Motion for Partial Summary Judgment (the "Money Affidavit") at ¶¶ 12-13, a copy of which is attached as Exhibit 1 to the Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment [Docket No. 22]. From a financial perspective, while Plaintiff paid significant funds to Amerix, it saved significant expenses as well, the net effect meaning increased efficiency in Plaintiff's operations. *Id.* Moreover, Plaintiff did not contract out the educational component of its operations, a component that the IRS admits substantial. *See* Summary Judgment Motion, Examination Results Excerpt, Item C.5, Exhibit 13 (IRS reviewed "numerous newsletters, educational printed materials, and [NCCS's] website" and same were "[h]igh quality publications [that] have abundant educational content").

In addition, as pointed out in the Summary Judgment Motion, Plaintiff reported its relationship with Amerix to the IRS on its Forms 990, and did nothing to conceal same. Defendant repeatedly complains that Plaintiff did not provide certain detail regarding its relationship with Amerix to the IRS on its Forms 990, but Defendant offers no authority in opposition to Plaintiff's authoritative argument that there was no obligation to provide the level of detail the IRS complains it did not receive. As Plaintiff exhaustively explains in the Summary Judgment Motion, the relevant line in the Form 990 relating to the required reporting discussed herein is Line 76, which reads "Did the organization engage in any activity not previously reported to the IRS?" If the answer to the foregoing question is in the affirmative, the organization is directed to attach a detailed description of each such activity. In no place on the Form 990, however, is there a requirement to report, in detail or otherwise, changes in an

organization's method of operations.  Moreover, there is nothing in the facts to suggest that, had the IRS requested more detail regarding Plaintiff's relationship with Amerix, Plaintiff would not have provided all that the IRS then requested.  Instead, the IRS never requested, and Plaintiff was never obligated to provide, any more information to the IRS regarding its relationship with Amerix than what it reported on its Forms 990.[6]

Lastly, the argument of the need for more discovery and its pending motion under FRCP 56(f) fail to justify the entry of the requested relief.  The items which USA might seek in discovery will not create genuine issues of material fact as to the propriety of *retroactive* revocation of NCCS's tax-exempt status.  Consequently, the argument must fail.  Already, this Court has been presented with admissions from the IRS from the time of the examination leading to the retroactive revocation.  A fishing expedition for *post hoc* rationalizations or justification for taking the action will not insulate the IRS from arbitrary administrative action; thus, the alleged need for discovery does not preclude this Court from acting on the instant Motion for Partial Summary Judgment.

## POINTS IN RESPONSE TO DEFENDANT'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

As part of its Opp. Mem., Defendant filed United States' Statement of Genuine Issues Setting Forth Material Facts to Which There Exists a Genuine Issue ("USA's Statement") [Docket No. 27-7].  In short, the responses by USA show the absurdity of the supposed issues of fact that USA claims should preclude entry of partial summary judgment in favor of NCCS.

---

[6]  Once more, just like failing to seek additional information regarding Plaintiff's relationship with Amerix as and when Plaintiff disclosed same on its Forms 990, the IRS fails to directly address a key legal issue espoused in the Summary Judgment Motion relating to Plaintiff's relationship with Amerix, that is, that such relationship was, at worst, a change in Plaintiff's operations that was properly reported to the IRS on Forms 990 – Defendant instead chooses to create discovery issues which will have no impact on whether Plaintiff changed its operations from what it had reported to the IRS on Form 1023 as supplemented by Forms 990.

More to the point, the facts USA asserts are in issue either are not material or do not relate to the issue of the propriety of the retroactivity of the revocation.

Of particular note is USA's use of the USA's Statement to distance itself from admissions in its own Examination Report and to deny their import. *See* USA's Statement at ¶¶ 26-31. The denials can only be an attempt by Defendant to steer this Court away from the very important admissions made in its Examination Report regarding its audit examination of Plaintiff.

Finally, NCCS feels compelled to respond to the affirmative allegation in "Defendant's Additional Material Facts" section contained in ¶ 35 of USA's Statement. Plaintiff admits that it did not make an express reference to section 7805(b) of the Internal Revenue Code in the Protest Letter with regard to the legal issue of retroactive application of the IRS's revocation of Plaintiff's tax-exempt status, but the same is not material for the reasons set forth hereinabove. Moreover, USA errs in asserting that NCCS did not notify the IRS that NCCS protested the retroactivity of the revocation; the Protest Letter is replete with such references. *See supra,* at 5-6.

## CONCLUSION

In light of the foregoing, the Court should grant Plaintiff's Motion for Partial Summary Judgment, and declare that regardless of whether revocation of Plaintiff's tax-exempt status is/was appropriate, such revocation cannot be earlier than the date upon which the IRS commenced its examination of Plaintiff -- November 3, 2004 -- and Plaintiff respectfully requests that this Court grant such other relief as this Court deems just and proper under the circumstances.

/s/ Gary S. Posner_____
Gary S. Posner  (Bar I.D. No. MD05863)
Whiteford, Taylor & Preston L.L.P.
7 Saint Paul Street
Baltimore, Maryland  21202-1626
Tel (410) 347-8700
Fax (410) 752-7092
*E-mail*: gposner@wtplaw.com

/s/ Jonathan Z. May_____
Jonathan Z. May (Bar I.D. No. 495031)
Robert D. Earle (Bar I.D. No. 449012)
Whiteford, Taylor & Preston L.L.P.
50  Corporate Center
10500 Little Patuxent Parkway, Ste. 750
Columbia, Maryland 21044-3585
Tel (410) 884-0700
Fax (410) 884-2451
*E-mail:*  jmay@wtplaw.com

Attorneys for Plaintiff,
    National Credit Counseling Services, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of February, 2008, a copy of the foregoing

Memorandum in Reply to United States' Memorandum of Points and Authorities in Opposition

to Plaintiff's Motion for Partial Summary Judgment was sent electronically, via the Court's ECF

System, and via first class United States mail, postage prepaid, to:

> Lawrence P. Blaskopf
> Benjamin J. Weir
> Civil Trial Section, Eastern Region
> U.S. Department of Justice, Tax Division
> P.O. Box 227
> Washington, D.C.  20044


> /s/Gary S. Posner_____
> Gary S. Posner

1778903